EASTCOTT v. METAL CRAFT CO.

1. NUISANCE—INJUNCTION—RESIDENTIAL DISTRICT—FACTORY—EQUITY.

While property owners, who purchased their home after adjacent building had been converted into factory in a district which is neither restricted nor strictly residential, are not entitled to that degree of protection from nuisance created by factory they might receive in strictly residential district, they are entitled to relief to the extent that their rights have been invaded.

As to whether noise with or without vibration incident to lawful industrial business constitutes a nuisance, see annotation in 17 L. R. A. (N. S.) 287; 44 L. R. A. (N. S.) 236; 23 A. L. R. 1408.

2. Same—Equitable Relief.

   Decree granting relief from nuisance created by factory adjacent
     to plaintiffs' home is modified, on appeal, with right reserved
     to them to again apply to court for further relief in case
     changes required are insufficient to give them the relief to
     which they are equitably entitled.

Appeal from Wayne; Runnels (Herbert W.), J., presiding. Submitted April 17, 1931. (Docket No. 131, Calendar No. 34,962.) Decided June 1, 1931.

Bill by Thomas Eastcott and another against Metal Craft Company, a Michigan corporation, and another to abate a nuisance arising from the operation of a machine shop. Decree for plaintiffs. Defendants appeal. Modified and affirmed.

*Tilden M. Gallagher,* for plaintiffs.

*Carey, Armstrong, Weadock & Essery,* for defendants.

North, J. By the bill of complaint filed herein on August 1, 1929, the plaintiffs asked the abatement of a nuisance alleged to have resulted from defendants' manner of maintaining and operating a machine shop or factory immediately adjacent to plaintiffs' residence. Defendants' factory is located at 3546 National avenue, Detroit, Michigan, this being at the corner of National avenue and Brainard street. Plaintiffs' residence is located immediately south of defendants' building and distant therefrom only six feet. Defendants purchased their property in 1923. There was then located thereon a one-story building 30 by 60 feet originally designed for use as a church. Defendants immediately after

their purchase installed therein several machines and began manufacturing various metal parts for automobiles, stampings, mouldings, etc. In 1925 plaintiffs purchased the property where they now reside. It was then being operated as a rooming house, and plaintiffs have continued that activity. Shortly after plaintiffs purchased, defendants increased the capacity of their plant by adding a second story to their building. Again in 1928 defendants extended their plant by erecting a two-story brick building fronting on Brainard street and adjacent to the rear of the other building. The additions were constructed without complaint from plaintiffs. Before plaintiffs purchased their property Mr. Eastcott made some investigation as to the character of defendants' business but does not seem to have obtained any very definite information. Defendants' plant and the conduct of its business brought forth no objection from plaintiffs until shortly before the filing of the bill of complaint in 1929. The record discloses that defendants added to their machine equipment from time to time and that two of their largest punch presses are located on the south side of their original building. These machines are placed on reinforced concrete foundations extending some distance into the ground for the obvious purpose of minimizing vibration. They have been in their present location since April, 1925, which was prior to the time plaintiffs purchased their property. A third machine of like type was similarly located in defendants' plant in March, 1928. While these are the largest machines in defendants' factory, it seems to appear from the record that they are not the largest type of machine of this class. This particular part of defendants' equipment and its method of operation is of par-

ticular importance in this case, because in plaintiffs' brief it is stated:

"The nuisance consists in the operation of certain heavy punch presses located along the southerly wall, and as to these, and these only relief (by the court's decree) was obtained."

Plaintiffs do not urge that they are entitled to have defendants enjoined from operating this manufacturing plant, but rather to have its operation so regulated that the nuisance of which complaint is made will be abated. It is plaintiffs' claim that the objectionable condition arising from the running of the plant has gradually increased until it has become a *nuisance per accidens*. The alleged situation is thus outlined in plaintiffs' brief:

"In 1927, the noise and pounding grew worse, though the vibration was slight; more machinery was installed. During the latter part of 1927, and the early part of 1928, noise, vibration and smoke increased gradually. The vibration, of which more especial complaint is made, developed in the winter of 1928, and the spring of 1929. Mr. Eastcott first observed damaging effects, from vibration, in 1928–1929."

It was after first noticing the alleged damage from vibration that complaint of the existing conditions was made by plaintiffs to defendants. Plaintiffs claim that in the summer of 1929 the trouble became acute. There is some testimony that additional presses were moved into the factory during the latter year. After hearing testimony somewhat at length and viewing the premises of the respective parties, the trial judge entered a decree for the plaintiffs, and defendants have appealed. It is mainly appellants' contention that the decree is over

severe and inequitable in what it requires of appellants by way of abating the nuisance and also that it is vague and uncertain in its terms to the extent that it is impossible for them to determine what is required to comply with its conditions. The decree requires appellants to construct:

"A solid, as near as possible, sound-proof wall in the place of the old south wall of the said factory adjacent to plaintiffs' premises so that all windows and openings are eliminated and so that noise and vibrations caused by the operation of such factory cease. And * * * that the said defendants * * * remove the three heavy punch presses * * * from the south side of defendants' factory, and that the same be placed upon cork-based concrete, sound-proof foundations upon the north side of said defendants' factory building so that the heavy punch presses will not be adjacent to plaintiffs' premises, and to eliminate any noise or vibration on the south side of defendants' factory."

From a careful review of this record we are of the opinion that less drastic requirements will afford plaintiffs all of the relief they are equitably entitled to receive. In arriving at a fair and equitable disposition of the conflicting claims of these parties, it must be borne in mind that plaintiffs purchased their property after this factory was established in its present location. While there are no other manufacturing activities of the same or of a similar type in the immediate vicinity, there are other commercial activities. The locality is not only unrestricted, but its development is far from being strictly residential. The situation is one in which plaintiffs are not entitled to a decree which will afford them that high degree of protection they might receive in a strictly residential district. On

the other hand, it clearly appears that in the manner of operating their plant the defendants have invaded plaintiffs' rights and they are entitled to relief.

We are impressed with the fact that no seriously objectionable results seem to have come from the operation of the two punch presses which have been located where they now are on the southerly side of defendants' premises since 1925; and also with the fact that if these presses were moved in accordance with the trial court's decree they would still be in the same portion of defendants' building and not more than 20 or 25 feet from their present location. It hardly seems that material benefits would result from so slight a change. Nor do we think that the installation of a third punch press of a like character on the southerly side of defendants' factory should necessarily materially aggravate the condition of which plaintiffs complain, especially if these machines are properly operated. It clearly appears from the record that plaintiffs' grievance is materially increased during the summer months when defendants' factory is operated with one or more of the five windows facing plaintiffs' house open and when the ventilating fan located on this side of defendants' building is in operation. There is some complaint that the southerly wall of defendants' building, which is constructed of twelve-inch cement blocks, plastered on the inside, is defective, and that this results in unnecessary damage to plaintiffs. We think the objectionable conditions will be largely overcome if defendants are required to install double windows in the original factory building adjacent to plaintiffs' property, and to keep such windows closed at all times and to remove the ventilating fan in this wall. That further, the defend-

ants should be required to repair any defects in the south wall of their building in the way of cracks or otherwise which aggravate the condition of which plaintiffs complain; and to use reasonable care in the manner of operating the three punch presses above particularly referred to with the view to minimizing the resultant vibration; and that they otherwise use all reasonable care in the operation of their factory to avoid unnecessary interference with plaintiffs' full enjoyment of their property either because of unnecessary noise, vibration, dust, or odors from defendants' factory. The defendants should not be required to subject themselves to the expense of relocating their machines or of building a new south wall nor to the disadvantage of entirely shutting off the light from this side of their building until it has been more conclusively established that a reasonable protection of plaintiffs' rights requires one or more of such changes.

The decree of the lower court will be modified, and a decree in accordance with this opinion entered in this court; but the modified decree will also provide that if the provisions therein are inadequate to afford plaintiffs the relief to which they are equitably entitled, such decree upon application to the circuit court, in chancery, and upon proper showing, may be modified in accordance with what may then appear to be the equities in the case. No costs will be awarded in this court.

Butzel, C. J., and Wiest, Clark, McDonald, Potter, Sharpe, and Fead, JJ., concurred.